## Case No. 12,464.

### SCHMIDT v. The PENNSYLVANIA.

[7 Wkly. Notes. Cas. 98.]

District Court, E. D. Pennsylvania. Nov. 5, 1878.[1]

VENDOR AND PURCHASER — THROUGH BILLS OF LADING—STOPPAGE IN TRANSITU—LIABILITY OF MASTER TO SUBVENDEE.

1. A shipper of goods has no right to stop them, after a sale by his vendee to a third party.

2. The master's refusal to deliver to such subsequent vendee, though under the vendor's orders, is at the master's peril, and if loss occur, e. g. by reason of a falling market, he is responsible to such vendee.

This was a libel filed by Schmidt, the holder of a bill of lading for goatskins, which on arrival of the vessel, the steamship Pennsylvania, at Philadelphia, he presented to the ship's agent, and delivery of which was refused pursuant to a cable telegram from the shippers. The goods originally were shipped by one Bresch at Trieste on a through bill of lading, via Liverpool, signed by the respondents' agent at Trieste. The goods came into the respondent's possession, and were forwarded by them from Liverpool. The bill of lading was made out in the name of Bresch as shipper, deliverable to his order. Bresch indorsed the through bill of lading to Havemann & Poleman, at Paris, from whom Schmidt obtained the same, by indorsement, for value. Before arrival of the vessel at Philadelphia Bresch's agent at Liverpool telegraphed the

---

[1] [Affirmed in 4 Fed. 548.]

agents of the Pennsylvania to stop delivery of the goods as against the holder of the bill of lading. The vessel arrived at Philadelphia February 3, 1878, and commenced discharging cargo on the 7th. The libel was filed on the 12th of February 1878, claiming the value of the goods. On February 19, 1878, before the time for filing an answer had expired, the order to stop was withdrawn, and on the same day the vessel's agent notified Schmidt of the fact that they were prepared to deliver the skins. Schmidt refused to accept the same unless paid the sum of $1,090.51, for the damages which he had sustained by loss of a sale to one Keene. Subsequently, under an order of court, the skins were delivered to Schmidt, he reserving his right to claim damages for any loss which he had sustained by the refusal to deliver on arrival. The evidence of the sale of the goods to Keene consisted of an order for the importation of these skins, accepted by Keene, from Schmidt, dated at Philadelphia. This order stipulated that Keene should advance part of the price in two notes for $800 each, Keene to pay insurance and banker's commission. the goods to be shipped in December. Havemann & Poleman, at Paris had secured the goods in Trieste of Bresch for December shipment. and notified Schmidt of the price at which they had secured them, offering them at a smaller advance to Schmidt, who accepted, and placed them with Keene; Havemann & Poleman allowing Schmidt a commission in the transaction. The goods were shipped from Trieste in December.

The answer of the steamship company set forth the facts in relation to the shipment, the notice by the shipper to stop in transit, and the subsequent withdrawal of the order, and the offer to deliver to Schmidt, and further averred as follows: "And that. in acting in accordance with the same, the respondents fulfilled their duties as carriers under the engagement with the shipper contained in the bill of lading. and that no liability exists on the part of the respondents for any loss which the libelant may have sustained by reason of the exercise by the vendor of the right of stoppage while in their hands as carriers."

E. G. Platt and S. Dickson, for Schmidt, libelant.

The whole transaction, as disclosed by the correspondence and testimony, shows that Schmidt became the purchaser of these skins from Havemann & Poleman, and subsequently sold them to Keene. He had paid for the goods. and therefore was a bona fide holder for value of this bill of lading. That being so, the right of stoppage in transitu did not exist. This has been settled ever since the leading case of Lickbarrow v. Mason [2 Term R. 63]. If the owner of a vessel. under such circumstances. takes upon himself the responsibility of refusing delivery of the goods, he does it at his peril. He runs the risk of the title of the holder being good as against the shipper, and in that case he is liable to him. Abb. Shipp. 337, 338. The only safe course, when the bill of lading is outstanding in the hands of a third party, is to demand indemnity from the shipper when he gives notice and attempts to exercise the right of stoppage in transitu.

CADWALADER, District Judge. Is an instrument like the one in question a regular bill of lading? And will a transferee for value be invested with the rights of a bona fide holder for value of a regular bill of lading? This paper was issued in Trieste, and is signed by the agent of the steamship company. Bills of lading are signed by the master of the vessel.

This is what is known as a through bill of lading. It may be true that a sailing vessel's bills of lading should be signed by the master. This is a steamship company, and the validity of these through bills of lading has become a well-recognized fact in the commercial world. By them goods are shipped from California to Russia, from China via United States to Europe, in fact from almost any one part of the globe to another. The distinction between the two classes is well settled. Schmidt, then, being the holder of the bill of lading, was entitled to the possession of the goods on arrival. On account of his inability to obtain possession, he lost the opportunity of carrying out the sale to Keene, and they were thrown back on his hands. The measure of damages, therefore, is the difference between what Keene would have paid him and what the goods were worth when actually delivered to him. This was not until March 4, 1878. The loss is, therefore. as appears by the testimony, about $2,000.

CADWALADER, District Judge. I think that the market value at the time the respondents offered to return them should be taken as February 19, 1878.

No, because they refused at that time to give them up unless we should waive all claim to damages. There was really no absolute offer to give them up until the time when the order of the court was made, viz. March 4th. We insist that that time, therefore, is to be taken for fixing the value of the skins.

M. P. Henry, for the steamship, contended that Schmidt acted only as agent for Keene. and that there was no loss of any sale by Schmidt, as the goods were Keene's. The libel should have been brought by Keene. As to the liability of the ship for obeying the orders of the shipper. The master is not bound to decide whether the right to stop has been lost by endorsement of the bill of lading for value or otherwise. The Tigress, Brown. & L. 44, denied the right of the master to demand evidence that the vendee had not parted with the bill of lading. The master had a right to compel Bresch and Schmidt

to interplead, and they would have applied to the court to take the goods in their custody, and determine the right of the respective parties to them. Abb. Shipp. 540; 2 Story, Eq. Jur. § 518; 3 Madd. Ch. Prac. tit. "Interpleader." This course was prevented by Bresch, the shipper, withdrawing the stoppage. It is the case of the holder of a fund claimed by two persons. The bailment of a transporter does not impose on the master the duty of determining whether the right of stoppage has been lost by the shipper. The master is the shipper's agent, and must obey his orders. Right of stoppage is not necessarily lost by indorsement to order. Feise v. Wray, 3 East, 93; Thompson v. Trail, 6 Barn. & C. 36; Litt v. Cowley, 7 Taunt. 169. If the master had undertaken to return the goods to the shipper, he would have incurred responsibility to the holder of the bill of lading, and vice versa; but while he held subject to the conflicting claims, he is not responsible.

November 23, 1878. THE COURT (CAD-WALADER, District Judge). The detention of the skins by the defendants was wrongful. There could be no rightful stoppage in transitu by reason of the former owner's insolvency. Through this wrongful detention and the consequent inability to deliver the goods to the purchaser in Philadelphia, the benefit of the sale to him was lost. He rejected the goods, as he had a right to do, and the market had fallen so that a loss, which is the measure of damages, had been suffered.

Decree accordingly.

[On appeal to the circuit court. the decree of this court was affirmed. 4 Fed. 548.]